Samuel Pierce
5-8-9 Towa, Adachi City
Tokyo, Japan 120-0003
Telephone:  (216) 215-0314
Email:    pierce2015@lawnet.ucla.edu

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
March 4, 2022
Michelle Rynne, Clerk of Court

# UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| Samuel Pierce, <br><br> Plaintiffs, <br><br> v. <br><br> Marie Gavigan, in her personal capacity, <br><br> Gary Yamashiroya, in his personal capacity, <br><br> David Matsumiya, in his personal capacity, <br><br> John Does 1-10, <br><br> Defendants. | CV 22-00083 JMS-KJM <br> DOCKET NO.: ~~21-cv-351-JMS-KJM~~ <br><br> **CIVIL ACTION** <br><br> **SECOND AMENDED** <br><br> **COMPLAINT** |

## SECOND AMENDED COMPLAINT

Plaintiff Samuel Pierce, through counsel, brings this complaint for damages.

## INTRODUCTION

1. Plaintiff Samuel Pierce originally brought a complaint in this court to challenge as unconstitutional Hawaii's COVID-19 "safe travels" program because it impermissibly and irrationally treated Americans arriving from Japan differently than Americans arriving from elsewhere in the United States and the world in a scheme that by all appearances seems designed to enrich cronies of the State's Governor David Ige in Japan.

2. In a gauche and horrifically unconstitutional attempt to retaliate against Mr. Pierce for bringing this lawsuit, the State of Hawaii, through its employees and/or other agents, sent an email vilifying Mr. Pierce to his employer TMI Associates, a law firm in Japan that it emerged has significant intermingled business with the State of Hawaii and its Governor personally.

3. As a direct result of the email, Mr. Pierce's employer terminated Mr. Pierce.

4. Defendants' retaliation violates the First Amendment's Speech and Petition clauses. Mr. Pierce seeks compensation for the significant damages defendants' unconstitutional retaliation has caused.

## THE PARTIES

5. Mr. Pierce is an American citizen who resides in Japan and is not a citizen of the State of

Hawaii.

6. Marie Gavigan, Gary Yamashiroya, and David Matsumiya were and are employees of the State of Hawaii responsible for handling legal matters related to Safe Travels including this case;

7. John Does 1-10 are unknown individuals who participated in the production, sending, and the related decision process leading up to the production and sending of the email at issue in this complaint.

## JURISDICTION AND VENUE

8.   Federal Courts have jurisdiction over this case as authorized by 28 U.S.C. § 1331 (federal question).

9. Mr. Pierce is seeking damages well in excess of $75,000 and does not share state citizenship with any defendant named in this lawsuit.

10. Therefore, jurisdiction is also vested by 28 U.S.C. § 1332(a) (diversity).    The Court would also have supplemental jurisdiction over the Hawaii state law claims.

## FACTUAL ALLEGATIONS

11. Acting without authorization under State Law, Hawaii ignored the unambiguous text of the Constitution, binding U.S. Supreme Court precedent, the State department and ordinary foreign relations protocol in setting up its own network of Covid clinics in Japan purportedly to apply a higher quality standard than for testing for travelers to the USA at

SECOND AMENDED COMPLAINT

large but in actuality seemingly calculated to rip off Japan-Hawaii passengers for the personal benefit of State cronies in Japan.

12. On July 19, 2021, Plaintiff traveled from his place of employment at TMI Associates in the Minato Ward of Tokyo a considerable distance to Fujimino Emergency Clinic in Saitama Prefecture which was a facility part of the Hawaii scheme that seemed to offer easy walk-up testing that could accomplish all the necessary procedures in a single visit. Plaintiff met his spouse who is a Japanese citizen at the facility.   After arriving at the facility which was causing an 4 hour detour on the commute home, staff informed Plaintiff and his wife that they would have to come back the next day to pick up a physical paper form specific to Hawaii's scheme.   Plaintiff and his wife were irate that they would have to repeat the same arduous trek from Fujimino in Saitama Prefecture the next day just to receive this paper and demanded to know why they could not receive an electronic copy.

13. Staff told them that State of Hawaii agents required exclusively physical paper copies of test results as part of this scheme on forms which State of Hawaii agents charged ¥500 yen each for even though they are ordinary sheets of yellow construction paper. Thus, plaintiff had to return the following day on July 20, 2021 to Fujimino to collect the State of Hawaii form.   On July 21, 2021, Plaintiff brought the form to JAL employees who had been told by the State to deny boarding to anyone not in possession of the forms which State of Hawaii agents charged ¥500 yen each.   Nothing in life is free, and yellow construction paper does not rain down upon Fujimino Emergency Clinic out of the sky. Someone paid for the yellow paper, but it could have only been a few cents per sheet not

SECOND AMENDED COMPLAINT

almost five dollars, and someone else got difference.    But since Governor Ige "suspended" basically all laws having to due with government transparency in wildly abusing the State law emergency powers well beyond their 60 day limit, we can't know who.

14. Plaintiff planned to go to Hawaii on August 20 and this time expected not to have to go through the above process because the State wasn't requiring testing for vaccinated passengers, as Plaintiff himself had experienced on a July 30, 2021 flight from California to Hawaii.    However Hawaii carved out an exception to the vaccine requirement exclusively for Japan which was the only place it used the ¥500 yen form, and refused to allow an exception to the exception for thrice vaccinated Plaintiff for the August 20, 2021 flight he planned to take.    Plaintiff pleaded with the U.S. Embassy to intervene but the Embassy told Plaintiff Hawaii would not listen to it.    Instead, Hawaii officials bragged about how great their clinics in Japan were and steadfastly refused what might be conceived as a vaccine exemption from Hawaii's quarantine, but in actuality due to the border control applied as described was more akin to immigration permission to Hawaii from State officials.    Thus, even if Plaintiff had been willing to take the risk of brutality from the Honolulu Police Department whose every move State government has carefully controlled in enforcing the 2-year emergency order on innocent Americans, he could not have and had to cancel his flight.

15. Instead of going to Hawaii, Plaintiff filed the instant lawsuit.    The next week, the Court's clerk sent a packet to fill in for ECF access.    The Court's rules required the submission of courtesy copies which was impossible for Plaintiff in an absurd way that

SECOND AMENDED COMPLAINT

highlighted the brutality of Hawaii's quarantine order which prohibited leaving place of confinement under any non-life-threatening circumstances.    In view of the above circumstances, Plaintiff sent back a single-sheet explanation asking to be excused from the Court's courtesy copy requirement without which excuse the Court's rules would not allow Plaintiff to make any motion such as the temporary restraining order Plaintiff sought to enjoin the operation of Safe Travels in Japan.

16. With scant basis in public health to defend against the temporary restraining order the State instead turned to the same playbook of intimidation, obstruction of justice, and disregard for law that has been used all too often during the Ige Administration.    As Plaintiff was filling out his ECF permission forms and asking to be able to proceed notwithstanding the impossibility of filing courtesy copies, Marie Gavigan, Gary Yamashiroya, and David Matsumiya were discovering that ironically the Plaintiff was employed by the same law firm in Japan relied on by the Ige Administration to handle both the State (to whatever limited extent it might have a legitimate need) and David Ige's personal business.    Given just the Plaintiff's first and last name and the fact he lived in Japan, Gavigan and her colleagues could find the Plaintiff's profile on the website of TMI Associates.

17. The Court said it carefully considered the request to be able to proceed with the temporary restraining order notwithstanding the frustration of the ability to file courtesy copies and granted that request.    Soon after on August 27, 2021 Hawaii time, the State then emailed the Plaintiff to inform him that the State had discovered that the Plaintiff was a federal agency-licensed attorney as shown on the Plaintiff's profile on the website

SECOND AMENDED COMPLAINT

of TMI Associates.    The State said that even though the Court wrote it carefully

considered the courtesy copy excusal, the Court actually might not have looked at the

request at all.    Though it would be the most extortionate bar complaint in the history of

the United States, the State implied it was going to bring one for a supposed improper ex

parte communication.    It is difficult to convey just how silly this threat is.

18. On September 1, Mr. Pierce was called into a meeting with his superiors at his law firm.

At the meeting, he was shown an email from someone at the State of Hawaii that claimed

falsely that Mr. Pierce had been arrested for larceny and that he had previously sued a

university for race discrimination.

19. On information and belief, the letter was sent by someone or on behalf of someone

working in the State of Hawaii's Department of the Attorney General.    As a result of

this effort to intimidate with the substantial resources of the State being used to such a

flagrant extent, Plaintiff became reasonably in fear of his life, worried that the State

actors would stop at nothing to destroy him and prevent him from discovering any further

details about the business of the State of Hawaii and David Ige at TMI Associates.

20. Mr. Pierce was ordered to write a series of memos to his employer explaining the

allegations in the letter which would be shared with Katsuro Tanaka, the largest owner of

TMI Associates.

21. It quickly became clear that Mr. Pierce was being pressured by his employer to drop the

lawsuit or be fired.    Mr. Pierce's reputation had been completely obliterated and now his

closest contact at TMI and mentor Yoshiyuki Inaba wouldn't talk to him.    Toyotaka Abe

SECOND AMENDED COMPLAINT

told Mr. Pierce that Yoshiyuki Inaba had been the one to receive the e-mail from the State of Hawaii, at the e-mail address yinaba@tmi.gr.jp.   Yoshyuki Inaba is one of the largest owners of TMI after Katsuro Tanaka, and Yoshiyuki Inaba was in charge of TMI's patent practice of which Mr. Pierce was a part.   Up until the e-mail Plaintiff had a very close bond with Yoshi Inaba forged by their mutual love of golf and Plaintiff had just arranged directly with Scotty Cameron in the summer of 2021 for Inaba to purchase a one-of-a-kind putter to use on the course for which Inaba paid $15,000.   Again it is difficult to convey just how likely it would have been that Inaba and others at TMI Associates would have bragged to Plaintiff about TMI's business with Hawaii if Inaba and his co-owners were not well aware that the business of Hawaii and its governor was completely improper.   Whenever TMI had any major client, even if it had nothing to do with patent law, it was customary for the firm to consult with the Plaintiff given the high esteem TMI's partners held the Plaintiff in prior to the hit email.   The top-secret public business of the State of Hawaii was the lone exception.

22. The memos for Katsuro Tanaka fell flat.   In particular, having brought a lawsuit for race discrimination proved difficult to explain at the time.   Had Justice Breyer decided to retire on September 2, 2021, and the United States humiliated itself then by refusing to consider anyone other than a Black woman to replace him, Plaintiff might well still be working at TMI.   Though it is much easier for Japanese citizens to understand now, at the time the memo explaining that the United States had abandoned all use of merit and reduced every single decision about whom to chose for any position to a matter of race was hard for them to comprehend.

SECOND AMENDED COMPLAINT

23. On September 13, Mr. Pierce was again called into a meeting with his employer on the 23rd floor conference room at TMI's Roppongi Hills office.    Yoshiyuki Inaba spoke to Plaintiff finally.    Inaba and Plaintiff were very sad, because their relationship had been close.    Through tears, Inaba told Plaintiff TMI had to fire Plaintiff.    Inaba said that the State of Hawaii and Governor Ige personally were paying extremely substantial legal fees to TMI for "corporate" work on their intermingled business.    Inaba asked Plaintiff to understand that it was necessary to fire Plaintiff given Inaba's financial interests. Shortly thereafter, TMI's CFO Koji Matsui came in to the room and demanded Plaintiff's electronic equipment.    Plaintiff was escorted out without being afforded so much as the opportunity to gather his personal belongings from his office.    Thus, as result of the allegations in the State's email and attempt by the State to improperly leverage its business, Plaintiff was involuntarily terminated from Plaintiff's contractual employment in breach of the notice period required under the contract.

24. Because the email was sent to Mr. Pierce's employer, and that letter was only likely to accomplish its deterrent and retaliatory purpose because his employer did significant business with the Governor of Hawaii and the State of Hawaii, on information and belief, the email was sent at the instruction of, or at least with the knowledge and acquiescence of, a state official with ultimate policymaking authority.

25. As a result of his termination, Mr. Pierce also lost his government permission to work as a foreign attorney in Japan. The process for getting permission to practice again takes approximately 9 months once he finds a new employer, and in the meantime he has no legal way to ply his trade.

SECOND AMENDED COMPLAINT

## COUNT 1:

## VIOLATION OF 42 U.S.C. § 1983 (FIRST AMENDMENT AS INCORPORATED BY THE FOURTHEENTH AMENDMENT)

26. 42 U.S.C. § 1983 establishes a cause of action for violation of constitutional rights by state actors.

27. The First Amendment protects the right of persons to petition the government for the redress of grievances.

28.  In order to prove a § 1983 claim for retaliation, a plaintiff must establish that: "(1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.

29. Mr. Pierce engaged in constitutionally protected activity when he filed his lawsuit regarding Hawaii's Safe Travels program.

30. As a result of him filing the lawsuit, the State of Hawaii through its agents contacted Mr. Pierce's employer, with whom the State and its Governor has a relationship, with negative information about Mr. Pierce.

31. Mr. Pierce's lawsuit was the only reason that the letter was sent to his employer.

32. The retaliatory letter lead to Mr. Pierce losing his job when he refused to drop the lawsuit.

SECOND AMENDED COMPLAINT

33. Sending the letter was showed reckless and callous disregard for Mr. Pierce's constitutional right to petition the government for redress of grievances without retaliation.

34. The loss of his job has caused Mr. Pierce substantial financial hardship.

35. When he lost his job, Mr. Pierce was near the end of the process of applying to be a foreign lawyer in Japan through the "Gaiben" program. Because he was terminated, when he finds a new potential employer he must re-apply to the program, and the approval process takes 10 months. This, along with the loss of his job has lead to serious economic losses for Mr. Pierce.

36. As a result of the illegal retaliation in violation of the First Amendment's Petition and Speech Clauses, Mr. Pierce has suffered very substantial economic damages in addition to the intangible damages which cannot be remedied at all by the Court.   Mr. Pierce seeks compensatory damages, punitive damages, costs and attorney's fees as proven at trial.

## COUNT 2:
### VIOLATION OF 42 U.S.C. § 1983 (FOURTEENTH AMENDMENT PRIVILEGES AND IMMUNITIES CLAUSE)

37. The most fundamental right of a citizen of a nation is to cross the national border to enter the citizen's home country without interference from a political subdivision thereof. This is not only the most well-established right under the U.S. Constitution, it is obvious to any citizen of any country.

SECOND AMENDED COMPLAINT

38. This right does not depend on the presence or absence of an emergency of any magnitude.

39. Here, the defendants violated that right not only without any justification, but to enrich themselves personally.

40. All of the downstream damages Plaintiff incurred are the proximate result of the violation of this clearly established right and are recoverable based thereon.

## COUNT 3:

### TORTIOUS INTERFERENCE WITH CONTRACT UNDER HAWAII LAW

41. At the time defendants had the opportunity to view Plaintiff's profile on the website of TMI Associates, the Plaintiff had a written contract with TMI Associates.

42. Defendants would have been well aware based on Plaintiff's title at a foreign attorney at TMI Associates that Plaintiff very likely had a written contract.

43. Defendants e-mailed TMI Associates in order to leverage defendants' substantial business to induce TMI Associates to fire Plaintiff.

44. Defendants had absolutely no reason to communicate anything about Plaintiff to TMI Associates.   The only purpose for Defendants' craven conduct was to conceal money laundering and other financial frauds.

45. Plaintiff's contract with TMI Associates called for a notice period before it could be terminated.   As a result of defendants' email, TMI Associates breached the contract so

11

SECOND AMENDED COMPLAINT

that Plaintiff would be immediately removed from TMI Associates' premises without the notice period and not allowed to return.

46. As a result of defendants' inducement of the breach by TMI Associates, Plaintiff did not receive significant sums which would have otherwise been paid him.

## COUNT 4:

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER HAWAII LAW

47. To establish an IIED claim, a plaintiff must show that Defendants' actions were intentional or reckless, "outrageous," and caused "extreme emotional distress to another." Young v. Allstate Ins. Co., 119 Haw. 403, 429 (2008).

48. Here, defendants' shocking conduct was calculated, extreme in degree, went beyond all bounds of decency, was an atrocious display of contempt for federal law (i.e., the U.S. Constitution, Amendment I as incorporated by Amendment XIV), and is utterly intolerable in a civilized community.

49. As a result of the State's completely unwarranted incursion into Japan and the despicable campaign to intimidate the Plaintiff, the Plaintiff reasonably believed the State might stop at nothing and feared for his life, causing him extreme emotional distress.

50. The tactics described in this complaint are akin to those used by the most brutal, violent, and reprehensible government regimes in the planet's history.

SECOND AMENDED COMPLAINT

## PRAYER FOR RELIEF

**Wherefore**, plaintiff respectfully prays that judgment for each violation be entered against the defendants, jointly and severally, for:

1. Compensatory damages;

2. Other actual damages, incidental damages, and consequential damages as will be proved at trial against each of the Defendants, jointly and severally;

3. Interest on all sums;

4. Special damages as permitted by law;

5. Punitive damages as will be proven at trial against each of the Defendants, jointly and severally;

6. Court costs, expenses and reasonable attorneys' fees;

7. Any and all such other relief as the Court may deem just and proper.

**BENCH TRIAL DEMANDED**

Dated: March 3, 2022

Respectfully submitted,

__/s/ Samuel Pierce__
Samuel Pierce

*Plaintiff in pro per*

SECOND AMENDED COMPLAINT